**MEASUREX SYSTEMS, INC.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1984.

Decided April 9, 1985.

Perkins, Thompson, Hinckley & Keddy, Thomas B. Wheatley (orally), Philip C. Hunt, Portland, for plaintiff.

Crombie J.D. Garrett (orally), Lendall L. Smith, Polly Haight Frawley, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Measurex Systems, Inc., appeals from a judgment of the Superior Court, Kennebec County, upholding a use tax assessment by the State Tax Assessor based upon Measurex leases of computer equipment to Maine companies. On appeal Measurex contends, *inter alia,* (1) that the Measurex leases should be deemed "in lieu of purchase" under 36 M.R.S.A. § 1752(13) (1978); (2) that Measurex's use of the equipment is tax exempt under 36 M.R.S.A. § 1760(31) (1978); (3) that the assessor's denial of exemption to Measurex violates constitutional guarantees of equal protection; and (4) that the software used with the computer systems is not subject to the use tax because it is not tangible personal property under 36 M.R.S.A. § 1752(17) (1978). Because Measurex failed to meet its burden of proving that the transactions were not taxable, we affirm the judgment.

This case was presented to the Superior Court on an agreed statement of facts. Measurex Corporation, a California company, is a manufacturer, designer and developer of sensor-based computer process control systems. Measurex Systems, Inc., a wholly owned subsidiary of Measurex Corporation, markets, installs and services these systems. Three paper companies, Marcal Paper Mills, Inc., Kennebec River Pulp and Paper Co., Inc., and Eastern Fine Paper Company, Inc., acquired these systems to be used in conjunction with their paper manufacturing processes. In 1974, each of these companies entered into a 102 month lease with Measurex Systems. Each lease provided that at all times the system would remain the sole property of Measurex Systems and that at the end of the lease term, the lessee could renew the lease or purchase the equipment for 25% of its original cost. Each system contains substantially the same software.

On May 24, 1978, the assessor imposed a use tax assessment against Measurex Systems (Measurex) of $76,870.90 plus additional interest of $13,619.83. Measurex protested the assessment and petitioned for a reconsideration pursuant to the version of 36 M.R.S.A. § 151 (Supp.1984) then in effect.[1] On August 22, 1979, the assessor denied the petition. Measurex then appealed to the Superior Court for a hearing *de novo* under section 151.[2] After considerable delay, the parties submitted an agreed statement of facts. On March 8, 1984, the Superior Court affirmed the assessor's decision that the systems were taxable but found that to the extent that software was customized, its cost was exempt as services. We review the decision of the Superior Court[3] to determine whether Measurex has met its burden of proving that the transaction was not taxable.[4]

First, Measurex contends that the transactions between it and the paper companies were leases "in lieu of purchase" under 36 M.R.S.A. § 1752(13) (1978) and therefore not subject to the use tax. A lease "in lieu of purchase" is treated as a sale giving rise

1. 36 M.R.S.A. § 151 (1978) stated, in pertinent part:

 A taxpayer aggrieved by an assessment under this Title of any tax other than property tax may petition, within 15 days after receipt of notice of the assessment, for reconsideration of the assessment by the State Tax Assessor.

2. 36 M.R.S.A. § 151 (1978) stated, in pertinent part:

 The taxpayer or registrant may petition for judicial review of a decision on reconsidera-

tion in accordance with the Maine Administrative Procedure Act, except that the absence of a record shall be resolved in all appeals exclusively by a hearing de novo on review.

3. *Leadbetter International Trucks, Inc. v. State Tax Assessor,* 483 A.2d 1226, 1229 (Me.1984).

4. 36 M.R.S.A. § 1763 (1978) states:

 The burden of proving that a transaction was not taxable shall be upon the person charged with tax liability.

to a sales tax on the transaction. In such circumstances the paper company's purchases would be tax exempt pursuant to section 1760(31). Section 1752(13) defines "sale" as

> any transfer, exchange or barter, in any manner or by any means whatsoever, for a consideration in the regular course of business and includes leases and contracts payable by rental or license fees for the right of possession and use, but only when such leases and contracts are deemed to be in lieu of purchase by the State Tax Assessor.

■ The Legislature has specifically delegated the determination whether a lease should be deemed "in lieu of purchase" to the assessor who has issued a ruling interpreting the phrase "in lieu of purchase." This ruling provides that in order for a lease arrangement to be "in lieu of purchase," the lessee must acquire title to the property under the terms of the agreement and the property must be considered sold "for all intents and purposes." [5] A bona fide lease has been defined as contemplating use for a limited time and return to the buyer. *Trimount Coin Machine Co. v. Johnson, State Tax Assessor,* 152 Me. 109, 113, 124 A.2d 753, 756 (1956). Measurex has failed to meet its burden of demonstrating that the property was "for all intents and purposes" sold to the lessees. In fact, the stipulated facts indicate that to retain the systems at the end of the lease term, the paper companies must either purchase the equipment at 25% of its original cost or renew their leases. These circumstances more closely approximate a lease with use for a limited time and return to the buyer. *See* 11 M.R.S.A. § 1–201(37) (1964). Therefore, we conclude that the transactions between Measurex and the paper companies have not been demonstrated to be leases "in lieu of purchase." [6]

■ Second, Measurex argues that the transaction should be exempt from the use tax pursuant to 36 M.R.S.A. § 1760(31) (1978) as a use "by the purchaser ... in the production of tangible personal property." [7] In *Harold MacQuinn, Inc. v. Halperin,* 415 A.2d 818 (Me.1980), we determined that the bailment of machinery to another contractor was not use by the purchaser within the meaning of section 1760(31). As we stated in *MacQuinn,* when the Legislature intended to include leasing in exemptions from sales and use tax, it specifically said so. Moreover, exemptions in tax statutes should be strictly construed. *Id.* at 820. Measurex has failed to demonstrate that its transaction is distinguishable from the bailment in *MacQuinn.* Measurex has not shown, therefore, that the systems are in

---

5. Me. Dep't of Fin. and Adm'n Reg. 08–125 C.M.R. 316 (Sept. 16, 1961) provides in pertinent part:

> .02 Leases Deemed in Lieu of Purchase.
> If tangible personal property is, for all intents and purposes, sold but the transaction is designated as a lease or rental for the purpose of retaining title in the seller and as security for payment of the purchase price, or for the purpose of avoiding sales tax, the rental will be deemed to be in lieu of purchase, and total rental payments charged will be considered to constitute the sale price upon which tax is due. A lease shall be deemed "in lieu of purchase" when once the lessee enters into the so-called lease agreement, he must acquire title to the tangible personal property under the terms of the agreement. Tax in such cases is due at the time the transaction is entered into, except where total rental payments are not determinable in advance, in which case tax is due as rental payments accrue.

6. In *Hannaford Bros. Co., et al. v. State Tax Assessor,* 487 A.2d 251 (Me.1985), we held that a truck lease agreement constituted a lease "in lieu of purchase" under section 1752(13) and rule 316.02.

7. 36 M.R.S.A. § 1760 (1978) reads in pertinent part:

> No tax on sales, storage or use shall be collected upon or in connection with:
> ....
> **31. New machinery and equipment.** Sales of new machinery and equipment for use by the purchaser directly and primarily in the production of tangible personal property, which property is intended to be sold or leased ultimately for final use or consumption.

"use by the purchaser" as required by section 1760(31).

Measurex's third contention is based upon the fact that as a supplier/lessor it is required to pay use tax while a manufacturer/lessor is not required to pay such tax. Thus, Measurex argues, it has been denied equal protection of the law in violation of the Maine and United States Constitutions. Measurex has the burden of proving the constitutional violation. *Brann v. State*, 424 A.2d 699, 703 (Me.1981).

■ The United States Supreme Court has stated "that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). That Court has upheld a state's grant of tax exemption for individuals that was denied to nonindividuals, *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973), as well as an exemption for widows that was denied to widowers, *Kahn v. Sherin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). When no specific constitutional right, other than equal protection, is unduly burdened, only a showing of "invidious discrimination" or "palpably arbitrary" classification will suffice to demonstrate a constitutional violation. *Lehnhausen*, 410 U.S. at 359–60, 93 S.Ct. at 1003–04.

■ Measurex has not demonstrated any violation of our state constitutional guarantee of equal protection, Me. Const. art. I, § 6–A. We do not find the statutory distinction arbitrary or unreasonable. *See Penobscot Area Housing Development Corp. v. City of Brewer*, 434 A.2d 14, 25 (Me. 1981); *von Tiling v. City of Portland*, 268 A.2d 888, 892–93 (Me.1970). Nor has Measurex shown that similarly situated persons have not been treated equally. *Id.; see also Brann*, 424 A.2d at 703. Once again, only when a fundamental personal right is involved or a suspect class, must we determine that the distinction furthers a *compelling* state interest. *See Lambert v. Wentworth*, 423 A.2d 527, 532 (Me.1980). Measurex has failed to prove that similarly situated persons are treated unequally or that the taxation of suppliers/lessors is the result of arbitrary legislative action. Measurex cites *Boothe Financial Corp. v. Lindley*, 6 Ohio St.3d 247, 452 N.E.2d 1295 (1983), for the proposition that disparate taxation between manufacturers/lessors and suppliers/lessors is a denial of equal protection despite the fact that it results from the unintentional impact of a uniform policy. We think the reasoning of the majority in *Boothe* is unpersuasive and contrary to our interpretation of section 1760(31) in *MacQuinn*.

■ Finally, Measurex contends that even if the systems are otherwise found taxable, the software associated with them is exempt from tax as outside the definition of tangible personal property.[8] The Superior Court found that computer software should be divided into two categories: "canned" or "off the shelf" software and "custom" software. "Canned" software is prepared for a variety of users and is suitable for its purpose without modification. "Custom" software is prepared for a specific customer's needs and is not easily transferable to other customers.

In *Community Telecasting Service v. Johnson*, 220 A.2d 500 (Me.1966), we outlined the criteria to be used in determining whether a sale is one of services or tangible personal property as follows:

[W]here the creation of property to be transferred requires high skill and the

---

8. 36 M.R.S.A. § 1752(17) (1978) defines tangible personal property as

personal property which may be seen, weighed, measured, felt, touched or in any other manner perceived by the senses, but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidences of indebtedness or ownership.

**1196** ██ 

materials involved are of relatively little value and the principal value of the finished product lies in the services to be rendered, and the product is of little value to anyone other than the buyer, the transaction may be deemed a sale of services rather than goods. The relative dollar value of the service as against that of the product, sometimes expressed in percentages, has been held significant.

*Id.* at 503 (citations omitted). Under this definition, Measurex has not demonstrated that the distinction between "canned" and "custom" software adopted by the Superior Court is erroneous. "Canned" software has value apart from the programming services that create it because of its potential for resale and its value to more than one buyer. Clearly, in this case, the "canned" software is of value to other than the buyer because three paper companies purchased substantially the same software.

"Custom" software, on the other hand, falls within the definition of services set forth in *Community Telecasting.* The creation of "custom" software requires high skill, although the materials (computer discs) are of little value. Moreover, the product is of little value to other buyers because the software is prepared specifically for the needs of the particular user. The principal value lies in the services of the programmer. We find, therefore, that the distinction between "canned" and "custom" software adopted by the Superior Court constitutes a rational application of the statutory definition.

No other issue raised by Measurex merits discussion. We conclude, therefore, that the Superior Court correctly decided that Measurex failed to establish that its lease of computer systems to the paper companies was not a taxable use.

The entry is:

Judgment affirmed.

All concurring.